IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

MARCO A. GABARETTE,                )
                                   )
and                                )
                                   )
BRUCE LEVINE, Administrator of the Estate )
of Carlos Bolanos Castillo, deceased,     )
                                   )
        Plaintiffs,                )        Case No. 1:16-cv-00355 (GBL/TCB)
                                   )
        v.                         )
                                   )
EMPLOYERS INSURANCE COMPANY        )
OF WAUSAU, et al.,                 )
                                   )
        Defendants.                )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on four motions. The first motion is Defendant Purnell Furniture Services, Inc.'s ("Purnell") Motion to Dismiss or Drop (Dkt. No. 116). The second motion is Defendant Employers Insurance Company of Wausau's ("Wausau") Objection to Magistrate Judge's Ruling on Motion to Amend Complaint (Dkt. No. 113). The third motion is Plaintiff Bruce Levine, Personal Representative and Administrator of the Estate of Carlos Bolanos Castillo's ("Estate") Motion for Summary Judgment (Dkt. No. 103). The fourth motion is Wausau's cross-Motion for Summary Judgment (Dkt. No. 65).

This case concerns Plaintiff Marco A. Gabarette's ("Gabarette") Complaint for Declaratory Judgment (Dkt. No. 1-1) and the Castillo Estate's Amended Complaint for Declaratory Judgment (Dkt. Nos. 30, 106-1). Both Plaintiffs seek insurance coverage under the commercial automobile policy that Wausau issued to Purnell in connection with a dispute

following an accident involving a vehicle that Purnell rented from Penske Truck Leasing Company, LP ("Penske").

There are four issues before the Court. The first issue is whether the Court should dismiss Purnell, a nondiverse defendant that was joined by Castillo's Estate after the removal of this action. The Court grants Purnell's Motion to Dismiss or Drop because the Estate's Complaint does not state a claim against Purnell, and permitting Purnell to remain a party this action would defeat subject matter jurisdiction. Under 28 U.S.C. § 1447(e), once an action is removed the court may either (a) deny joinder, or (b) permit joinder and remand the action to the state court. Here, the Court finds that the balancing of the equities favors dismissing Purnell and continuing to exercise jurisdiction over this case.

The second issue is whether the magistrate judge erred by allowing the Estate to amend its complaint to add a claim for attorney fees, costs, and interest. The Court overrules Wausau's objection to the magistrate judge's ruling because the Estate alleged a plausible claim that would not necessarily be futile.

The third issue is whether Castillo's Estate is entitled to declaratory judgment on Count I of the Estate's Complaint, which seeks liability coverage under the policy that Wausau issued to Purnell. The Court grants Wausau's Motion for Summary Judgment and denies the Estate's cross-Motion for Summary Judgment as to Count I because a tort action is pending in state court that may affect whether the Estate is entitled to liability coverage. However, the Court dismisses Count I without prejudice.

The fourth issue is whether Gabarette or Castillo's Estate qualifies for underinsured motorist coverage. The Court grants Wausau's Motion for Summary Judgment and denies the

Estate's cross-Motion for Summary Judgment because the vehicle that Gabarette and Castillo were traveling in is not a "covered auto" for purposes of underinsured motorist coverage.

## I. BACKGROUND

### A. Factual Background

This declaratory judgment action arises out of a motor vehicle accident that occurred on August 7, 2012 (the "Accident"), in which Gabarette was injured and Castillo was killed.

Purnell maintained a warehouse in Manassas, Virginia where it warehoused furniture purchased at retail outlets for delivery to the homes of ultimate purchasers. At its Manassas facility, Purnell entered into agreements with a number of independent contractors to deliver furniture from Purnell's warehouse to the ultimate purchasers. Typically, these independent contractors supplied their own delivery vehicles, tools, and equipment.

On or about August 7, 2012, one of Purnell's regular independent contractors did not show up to deliver a load of furniture as scheduled. Jaime Colon ("Colon"), the Operations Manager at Purnell's Manassas facility, asked Gabarette's wife, Lidia Gabarette, if Elegant Delivery could deliver the extra load. Mrs. Gabarette owned and operated Elegant Delivery. She informed Colon that all of Elegant Delivery's trucks were already in use or unavailable. Colon allowed Mr. Gabarette to drive a 16-foot box truck (the "Vehicle") to deliver the extra load. Purnell had rented the Vehicle from Penske and had used the Vehicle primarily to transport waste cardboard from the Manassas facility for recycling purposes. Gabarette used the Vehicle to deliver furniture for Purnell, and Castillo rode as a passenger. Although the parties dispute whether Gabarette and Castillo were Purnell's "employees" for purposes of this delivery, their employment status is not material to this action.

3

As Gabarette and Castillo were traveling on Interstate Route 66, Gabarette pulled the Vehicle off onto the shoulder, and Castillo exited the Vehicle and checked on furniture that was in the cargo area. As Castillo was standing at the rear of the Vehicle, Jessica Lynn Coble ("Coble") allegedly fell asleep at the wheel and struck the Vehicle, injuring Gabarette and killing Castillo.

On November 14, 2013, Gabarette filed a personal injury action against Coble in Fairfax County Circuit Court. On August 6, 2014, the Estate filed a wrongful death action in the Fairfax County Circuit Court, naming numerous defendants, including Coble, Purnell, Elegant Delivery, and Gabarette.

## B. Procedural Background

Gabarette originally brought the present action in Fairfax County Circuit Court, naming Coble, Wausau, Purnell, and Castillo's Estate as defendants, and seeking a declaration that Wausau was required to provide Gabarette underinsured motorist ("UM/UIM") coverage under the Motor Carrier Commercial Policy issued by Wausau to Purnell (the "Policy"). (Dkt. No. 1-1; Dkt. No. 66-2.)

Wausau and Purnell removed the action to this Court, invoking diversity jurisdiction. (Dkt. No. 1.) At the time of removal, complete diversity between the parties was lacking because while Wausau is a citizen of Wisconsin and Massachusetts, Gabarette, Castillo's Estate, and Purnell are all citizens of Virginia. (*See* Dkt. No. 1 ¶¶ 8-9 & n.1.)

Acknowledging this, Wausau and Purnell stated in their Notice of Removal: "The courts . . . have recognized three exceptions to the strict requirement of diversity: (1) a court may ignore the citizenship of nominal parties; (2) a court may dismiss parties fraudulently joined; and (3) a court may realign the parties based on their true interests." (Dkt. No. 1 ¶ 14.) Wausau and

Purnell asserted that these exceptions applied to effectuate complete diversity in this action. In regards to Castillo's Estate, Wausau and Purnell argued that the Estate should be a plaintiff in this declaratory judgment action, rather than a defendant, because the Estate had the same interests as Gabarette. (*Id.* ¶ 16.) In regards to Purnell, Wausau and Purnell stated that Purnell was fraudulently joined because there was no possibility that Gabarette could establish any cause of action against Purnell. (*Id.* ¶ 17.)

After filing their notice of removal, Wausau and Purnell filed a Motion to Realign the Parties, seeking to realign the Estate as a party-plaintiff (Dkt. No. 5), and Purnell filed a Motion for Judgment on the Pleadings asking the Court to dismiss Gabarette's Complaint against Purnell for failure to state a claim (Dkt. No. 15). The effect of these motions was to create complete diversity, as contemplated in Wausau's and Purnell's Notice of Removal. By Orders entered on May 20, 2016, the Court granted the motions, realigning the Estate as a party-plaintiff and dismissing Purnell and Coble from this action. (Dkt. Nos. 23, 24.) At that point, complete diversity existed, and this Court had subject matter jurisdiction over this matter. The Court's Orders entered on May 20, 2016, granted Gabarette and Castillo's Estate leave to file an amended complaint. (*Id.*)

Gabarette did not file an amended complaint, and thus its original Complaint controls (Dkt. No. 1-1); however, this Court dismissed Coble and Purnell as parties to Gabarette's Complaint (Dkt. Nos. 23, 24). On June 24, 2016, Castillo's Estate filed its Amended Complaint. (Dkt. No. 30.) Although it sought only declarations that it, the Estate, was covered under the Policy issued by Wausau, the Estate included as defendants Wausau, Purnell, Gabarette, Coble, and Penske. (*Id.*) This Court dismissed Coble and Penske from this action. (Dkt. No. 25.)

When the Estate re-named Purnell as a defendant, it brought a nondiverse party back into this action. Wausau and Purnell took the position that the Estate's Amended Complaint failed to state any cause of action against Purnell, and Purnell was not a necessary party because it had no interest in the subject matter of the Estate's claims. By contrast, the Estate took the position that Purnell was a necessary party because the Court's interpretation of the Policy would affect Purnell's interests. However, the Estate's Amended Complaint did not seek a declaration that *Purnell* was entitled to liability coverage; rather, the Estate sought a declaration that it (the *Estate*) was entitled to liability coverage. On July 8, 2016, Purnell moved to dismiss the Amended Complaint for failure to state a claim. (Dkt. No. 35.) On September 23, 2016, the Court denied Purnell's Motion to Dismiss (Dkt. Nos. 87, 88), in part, because Wausau's Motion for Summary Judgment already was pending and the Court intended to resolve Purnell's involvement in this action when ruling on summary judgment. At the time, none of the parties raised the issue that keeping Purnell in this action may defeat diversity jurisdiction.

On October 12, 2016, the Estate filed a Motion to Amend Complaint to Include Claim for Attorneys [] Fees, Costs, and Prejudgment Post[-]Judgment Interest. (Dkt. No. 106.) On October 21, 2016, United States Magistrate Judge Theresa Buchanan granted the Estate's Motion to Amend Complaint. (Dkt. No. 111.) Thus, the Estate's Amended Complaint (Dkt. No. 30) was replaced by the Second Amended Complaint (Dkt. No. 106-1).

In sum, the complaint from each Plaintiff is before the Court. Gabarette's Complaint seeks a declaration that Wausau was required to provide Gabarette *underinsured* motorist coverage under the Policy. (Dkt. No. 1-1.) The first two counts in the Castillo Estate's Complaint have remained the same. In Count I, the Estate seeks a declaration that it is entitled to *liability* coverage under the Policy because Castillo was a permissive passenger in a "covered

6

auto" at the time of the Accident. (Dkt. Nos. 30 & 106-1 ¶ 30.) In Count II, the Estate seeks a

declaration that it is entitled to *underinsured* motorist coverage "pursuant to the terms of the

[Policy]," and pursuant to the Virginia Uninsured Motorist Statute, Va. Code § 38.2-2206. (Dkt.

No. 30 & 106-1 ¶¶ 36–40.) The Estate's Second Amended Complaint asserts the same two

Counts and adds Count III to seek attorney fees, costs, and pre- and post-judgment interest.

(Dkt. No. 106-1.)

## II. STANDARDS OF REVIEW

### A. Standard of Review for Motion to Dismiss or Drop

Where the plaintiff seeks to join a nondiverse defendant after the case has been removed,

the analysis begins with 28 U.S.C. § 1447(e). *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir.

1999). The "decision is not controlled by a Rule 19 analysis." *Id.* at 462. Pursuant to section

1447(e): "If after removal the plaintiff seeks to join additional defendants whose joinder would

destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the

action to the State court." Once the court determines that joinder is appropriate, remand is

automatic; "the statute does not allow a district court to retain jurisdiction once it permits a

nondiverse defendant to be joined." *Mayes*, 198 F.3d at 462.

Under section 1447(e), the decision of whether to permit joinder "is committed to the

sound discretion of the district court." *Mayes*, 198 F.3d at 462. In exercising its discretion under

the statute, the court will consider "all relevant factors, including: the extent to which the

purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory

in asking for amendment, whether the plaintiff will be significantly injured if amendment is not

allowed, and any other factors bearing on the equities." *Id.* In deciding whether to allow the

plaintiff to join nondiverse defendants, the court conducts a "balancing of the equities." *Id.* at 463.

## B. Standard of Review for Objection to Magistrate Judges' Ruling

Under Federal Rule of Civil Procedure 72(a), a district judge reviewing a party's objections to a magistrate's order must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The district judge reviews findings of fact under the "clearly erroneous" standard, and reviews legal conclusions to determine whether they are "contrary to law." *Bruce v. Hartford*, 21 F. Supp. 3d 590, 594 (E.D. Va. 2014). A court's finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 593–94 (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). As for legal conclusions, "there is no practical difference between review under Rule 72(a)'s contrary to law standard and [the] *de novo* standard." *Bruce*, 21 F. Supp. 3d at 594.

## C. Standard of Review for Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Askew v. HRFC, LLC*, 810 F.3d 263, 266 (4th Cir. 2016).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir.

2013). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*; *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (citations omitted). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Libertarian Party of Va.*, 718 F.3d at 313 (citation omitted).

Where parties file cross-motions for summary judgment, courts consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 392–93 (4th Cir. 2014) (citation and internal quotation marks omitted).

## III. ANALYSIS

The Court will resolve the following four issues in turn. First, the Court grants Defendant Purnell's Motion to Dismiss or Drop. Second, the Court overrules Wausau's objection to the magistrate judge's ruling permitting the Estate to amend its complaint. Third, the Court dismisses Count I of the Estate's Complaint, which seeks declaratory judgment for liability coverage. Fourth, the Court grants Wausau's Motion for Summary Judgment because the Vehicle involved in the Accident is not a "covered auto" for purposes of UM/UIM coverage.

### A. Whether the Court Should Dismiss Purnell

The Court grants Purnell's Motion to Dismiss or Drop because the Castillo Estate's Complaint does not allege a claim against Purnell, and permitting Purnell to remain a party this action would defeat subject matter jurisdiction.

Diversity jurisdiction exists only where there is complete diversity between the parties. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). In the Fourth Circuit, where the plaintiff seeks to join a nondiverse defendant after the case has been removed, the analysis begins with 28 U.S.C. § 1447(e). *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). Under 28 U.S.C. § 1447(e), the court may either (a) deny joinder, or (b) permit joinder and remand the action to the state court. *Mayes*, 198 F.3d at 461–63. In deciding whether to allow the plaintiff to join nondiverse defendants, the court conducts a "balancing of the equities." *Id.* at 463.

Here, after defendants removed Gabarette's Complaint, the Court realigned the Estate as a plaintiff and dismissed Purnell from this action. When the Estate filed its first complaint (styled as an "Amended Complaint"), the Estate essentially sought to join a nondiverse defendant (Purnell). Based on this procedural posture, the Court has only two options: (a) deny joinder of Purnell by dismissing it from this action; or (b) permit Purnell to remain a party to this action and remand the case to state court.

The Court finds that the balancing of the equities favors dismissing Purnell and continuing to exercise jurisdiction over this case. The Court exercises its discretion to dismiss Purnell primarily for three reasons. First, Castillo's Estate does not allege a claim against Purnell and included Purnell based only upon its purported interest in how the Court will interpret the Policy. Second, discovery has closed and cross-motions for summary judgment are pending. Third, the parties agreed during the motion hearing that if this Court cannot retain jurisdiction with Purnell as a defendant, then the parties would prefer to dismiss Purnell and keep this case in federal court.

Because Purnell's presence would defeat diversity jurisdiction and the balance of equities favors its dismissal, the Court grants Purnell's Motion to Dismiss or Drop.

## B. Whether the Magistrate Judge Erred by Granting the Estate's Motion to Amend

The Court overrules Wausau's objection to the magistrate judge's ruling because allowing the Estate to amend its complaint is not futile.

Under Federal Rule of Civil Procedure 72(a), a district judge reviewing a party's objections to a magistrate's order or ruling must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Where a plaintiff seeks to amend its complaint more than 21 days after serving it, the plaintiff may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Typically, leave to amend is liberally granted, but it may be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999). The standard for determining whether a proposed amendment is futile is the same as for a motion to dismiss under Rule 12(b)(6). *Mercexchange, LLC v. Ebay, Inc.*, 271 F. Supp. 2d 784, 788 (E.D. Va. 2002).

Thus, the question presented here is whether the Estate's Second Amended Complaint (Dkt. No. 106-1) alleges a plausible claim for pre- and post-judgment interest pursuant to Va. Code § 8.01-382, and for costs and attorney fees pursuant to Va. Code § 38.2-209. Virginia's "Bad Faith" Statute provides:

> in any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy . . . or the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award. However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.

11

Va. Code § 38.2-209. Here, the Court finds that the Estate stated a plausible claim for attorney fees, costs, and interests. Regardless of how this Court resolves this case at the summary judgment stage, it was appropriate for the magistrate judge to grant to the Estate leave to amend its complaint. Thus, the Court overrules Wausau's objection to the magistrate judge's ruling.

## C. Whether Castillo's Estate is Entitled to a Declaration Regarding Liability Coverage

The Court grants Wausau's Motion for Summary Judgment and denies Castillo Estate's cross-Motion for Summary Judgment with respect to Count I of the Estate's Second Amended Complaint, which seeks a declaration regarding liability coverage.

Relying on *Employers' Liab. Assur. Corp. v. Taylor*, 178 S.E. 772 (Va. 1935), and on Va. Code § 38.2-2200(2), Wausau argues that Virginia law does not permit an injured third party to maintain a direct action against the insurer unless and until the injured party has a final judgment against the insured party that is unsatisfied. *Taylor* is inapposite because that 1935 case addressed whether a provision in a *policy* barred the plaintiff from bringing an action before obtaining a final judgment, not whether *Virginia law* bars a plaintiff. *See Taylor*, 178 S.E. at 774. Further, the Virginia Code does not procedurally bar the Estate's claim because when an action is brought in federal court or removed here, federal procedural law determines whether a federal court may properly render a declaratory judgment, not state procedural law. *See Chapman v. Clarendon Nat. Ins. Co.*, 299 F. Supp. 2d 559, 563 (E.D. Va. 2004); *see also Potter v. Davis*, No. 2:15-cv-266, 2015 WL 5247709, at *3 (E.D. Va. Sept. 8, 2015) (unpublished) (rejecting defendant's argument that action was unripe because plaintiff had not first obtained a judgment pursuant to Va. Code § 38.2-2200).

Having determined that the issue of liability coverage is properly before the Court, the next question is whether the Court can grant the relief sought in the Estate's Second Amended

Complaint. The Second Amended Complaint claims that the Estate is "entitled to automobile liability insurance policy coverage under . . . the policy issued by [Wausau] to Purnell." (Dkt. Nos. 106-1 ¶ 32.)

Pursuant to Rule 56, Wausau and the Estate filed cross-motions for summary judgment as to Count I. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Here, neither Wausau nor the Estate has asserted any genuine dispute of material fact with regard to Count I, and the issue is whether either party is entitled to judgment as a matter of law.

In support of its motions, the Estate claims that "Count I may be withdrawn if [Wausau] admits the policy provides liability coverage in the event of a judgment." (Dkt. No. 98 at 25; Dkt. No. 104 at 29.) The Policy contains a coverage form setting forth the terms of liability coverage. The coverage form provides, in relevant part:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". . . .
>
> We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

(Policy at LM 611–12.[1]) For purposes of liability coverage, a "covered auto" applies to any auto. (Policy at LM 610.) Therefore, the Policy provides that if an "insured" legally must pay damages—*e.g.*, if a judgment is entered against Purnell—then Castillo's Estate would be entitled to liability coverage.

Under Virginia law, an insurer's "duty to defend" is broader than its "duty to indemnify." On the one hand, "an insurer's duty to defend arises 'whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy.'" *Penn–America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004) (quoting *Brenner v. Lawyers Title Ins. Corp.*, 397 S.E.2d 100, 102 (Va. 1990)). On the other hand, the "duty to indemnify . . . refers to an insurer's responsibility to pay a monetary award when its insured has become liable for a covered claim." *Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 448 F.3d 252, 257–58 (4th Cir. 2006) (applying Maryland law analogous to the Virginia law applicable here). When the underlying tort action is still pending in state court, the Fourth Circuit and the Eastern District of Virginia have declined to issue a declaration with respect to the duty to indemnify. *See Perdue Farms*, 448 F.3d at 259–60 (stating that courts "commonly withhold judgment on the scope of the duty to indemnify until the insured is found liable and the basis of any settlement or judgment is determined"); *Trice, Geary & Myers, LLC v. Camico Mut. Ins. Co.*, 459 F. App'x 266, 268 (4th Cir. 2011) (stating that "any determination as to whether [insurer] has a duty to indemnify [insured] must await the resolution of the underlying actions"); *Builders Mut. Ins. Co. v. Futura Grp., L.L.C.*, 779 F. Supp. 2d 529, 535 (E.D. Va. 2011) ("If the state court suit is not concluded by the time this Court addresses the duty to indemnify question, the Court will consider dismissing the indemnification claim without

---

[1] Citations to "LM" refer to the pagination printed on the Policy submitted as Docket No. 66-2.

prejudice, . . . or administratively closing the indemnification portion of the case pending resolution of the underlying state action.").

Here, Castillo's Estate has a pending tort action in state court against Gabarette, Purnell, and others. Based on the Estate's tort action, Wausau is currently defending Purnell in that action without any reservation of rights. (*See* Dkt. No. 112 at 23.) Thus, Wausau's duty to defend is not at issue here, and the relief sought by the Estate through its Second Amended Complaint is a declaration concerning Wausau's duty to indemnify.

Because the underlying tort action is still pending and the Estate has not shown that it is entitled to judgment as a matter of law, the Court denies the Estate's Motion for Summary Judgment. By contrast, Wausau's Motion for Summary Judgment does *not* seek to establish that it has no duty to indemnify Purnell; instead, Wausau's Motion for Summary Judgment seeks only to establish that its duty to indemnify has not yet been triggered and will depend on the resolution of the underlying tort action. On this narrow ground, the Court grants Wausau's Motion for Summary Judgment and dismisses Count I without prejudice.

**D. Whether Gabarette and Castillo's Estate are Entitled to UM/UIM Coverage**

The Court holds that the Vehicle operated by Gabarette during the Accident was not a "covered auto" for purposes of UM/UIM coverage. The Court therefore grants Wausau's Motion for Summary Judgment and denies Castillo Estate's cross-Motion for Summary Judgment.

**1. Applicable Policy Provisions**

Policy Declarations: The first section of the Policy consists of the Motor Carrier Declarations. (Policy at LM 543–47.) The Motor Carrier Declarations provide:

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTOS Section of the Motor Carrier Coverage Form next to the name of the coverage.

(Policy at LM 544–45.) Therefore, the Schedule of Coverages and Covered Autos sets forth the vehicles to which each type of coverage under the Policy applies.

The Declarations also include a Motor Carrier Declarations Extension Schedule which contains "ITEM FOUR – Schedule of Hired or Borrowed Covered Auto Coverage and Premiums." (Policy at LM 546–47.) This schedule indicates that Purnell was charged premiums for liability, comprehensive, and collision coverages for hired or borrowed vehicles, but does not include any premium for UM/UIM coverage for such vehicles. (Policy at LM 546–47.)

Coverage Forms: The Schedule of Coverages and Covered Autos sets forth the following coverages:

| Coverage | Covered Autos | Limit | Premium |
|---|---|---|---|
| Liability (LIAB)* | 61 | $1,000,000 | $13,053 |

*     *     *     *

| Coverage | Covered Autos | Limit | Premium |
|---|---|---|---|
| Uninsured Motorists (UM) | 62 | See UM/UIM Schedule | $260 |
| Underinsured Motorists (UIM) (When not included in Uninsured Motorists Coverage) | 62 ** | See UM/UIM Schedule | |

*     *     *     *

(Policy at LM 544.) The Covered Autos Section of the Motor Carrier Coverage Form of the Policy further provides:

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 61 | Any "Auto" | |
| 62 | Owned "Autos" Only | Only the "autos" you own (and for Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those "autos" you acquire ownership of after the policy begins. |

(Policy at LM 610.) Accordingly, symbol "61" on the Schedule of Coverages and Covered Autos shown above indicates that liability coverage under the Policy applies to "Any 'Auto',"

16

and the symbol "62" indicates that UM/UIM coverage under the Policy applies to "Owned 'Autos' Only." (*Id.*) The Policy also includes a "Schedule of Covered Autos You Own" that lists three vehicles. (Policy at LM 549.) The three vehicles were not owned by Purnell in the traditional sense; instead, they were rented from Penske under long-term rental agreements. The Vehicle operated by Gabarette during the Accident is not one of the three vehicles listed in the Schedule of Coverage Autos that Purnell owns.

In Wausau's view, under the "Any Auto" designation in the Declarations, liability coverage applies to hired or borrowed vehicles, and consistent with the "Owned 'Autos' Only" designation in the Declarations, UM/UIM coverage does not apply to hired or borrowed vehicles.

UM/UIM Endorsement: The Policy also contains an Uninsured Motorist Endorsement applicable to Virginia (the "UM/UIM Endorsement"). (Policy at LM 580–83.) The UM/UIM Endorsement is a standard form promulgated by the Virginia State Corporation Commission. The UM/UIM Endorsement provides, in relevant part, as follows:

> **B. We Will Pay**
> "We" will pay in accordance with the Virginia Uninsured Motorists Law, all sums the "insured" is legally entitled to recover as damages from the owner or operator of an "uninsured motor vehicle".

(*See* Policy at LM 581.) For purposes of UM/UIM coverage, the Policy defines an "insured" as follows:

> **D. Who Is Insured**
> 1. "You" or any "family member".
> 2. Anyone else "occupying" a "covered "auto".
> 3. Anyone for damages he or she is entitled to recover because of "bodily injury" to which this coverage applies, sustained by another "insured" under 1. or 2. above.

(*Id.*)

For purposes of liability coverage, the Policy defines an "insured" as follows:

**1. Who Is An Insured**

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

  (1) The owner, or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".

  (2) Your "employee" or agent if the covered "auto" is owned by that "employee" or agent or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower of a covered "auto" or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership), or member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

(Policy at LM 612.) Thus, to be an "insured" for purposes of either UM/UIM coverage or liability coverage, the Vehicle involved in the Accident must be a "covered auto."

The UM/UIM Endorsement contains the following definition of "covered auto":

"Covered auto" means a motor vehicle, or a "temporary substitute", with respect to which the "bodily injury" or "property damage" liability coverage of the policy applies.

(Policy at LM 580.) The UM/UIM Endorsement also states, "THIS ENDORSEMENT CHANGES THE POLICY." (Policy at LM 580.) Thus, in Gabarette and the Estate's view, the UM/UIM Endorsement supersedes any contradictory language in the Declarations and Coverage Forms. They argue that Gabarette and Castillo were "occupying" a "covered auto" because the UM/UIM Endorsement defines "covered auto" as a motor vehicle to which liability coverage applies.

## 2. Applicable Case Law

The parties dispute the applicability of six cases. As discussed further below, (1) *Stone* is of limited relevance; (2) the binding authority from *Akers*, *Bayer*, and *Hill* relied upon by Wausau indicates that the Vehicle is not a "covered auto" under the Policy; and (3) the nonbinding authority from *Neff* and *Porter* relied upon by Plaintiffs is distinguishable.

18

Both Wausau and the Plaintiffs argue that *Stone v. Liberty Mutual Insurance Company*, 478 S.E.2d 883 (Va. 1996), favors their position. In *Stone*, the Supreme Court of Virginia addressed whether the Virginia Uninsured Motorist Statute, Va. Code § 38.2-2206, mandated UM/UIM coverage for the plaintiff, Stone. *Id.* at 885. Stone was involved in an accident while using his own vehicle to deliver pizzas for his employer, the employer's automobile policy listed only two vehicles as being owned by the employer, and Stone's vehicle was not one of the employer-owned vehicles. *Id.* at 883–84. The *Stone* court concluded that the employer's policy created two distinct classes of "insured" persons, with different benefits to each class. *Id.* at 884. The first class included the "named insured" and family members residing in the same household, while the second class included "anyone else occupying a covered auto." *Id.* In *Stone*, like in this case, the issue was whether the Virginia Uninsured Motorist Statute mandated coverage for a person of the second class. *See id.* The court held that "the statute only requires, as to insureds of the second class, that uninsured motorist coverage be provided to those who are in . . . *the* motor vehicles listed in the policy, as opposed to 'any' vehicle to which the policy might apply." *Id.* at 886. *Stone* is relevant to this case only insofar as it indicates "there is no statutory mandate that requires the courts to ignore the insurer's policy language as written." *See id.* at 886. Thus, the issue that remains here is whether the Policy itself mandates coverage.

Second, in *Nationwide Mut. Ins. Co. v. Akers*, 340 F.2d 150 (4th Cir. 1965), the Fourth Circuit considered whether the vehicle involved in an accident was an "insured automobile" within the terms of the UM/UIM endorsement incorporated into the policy. *Id.* at 153. The individuals involved in the accident, the defendants, argued that the court should focus narrowly on the provisions within the UM/UIM endorsement. *Id.* at 154. In response, the Fourth Circuit stated:

> The endorsement along with other applicable clauses and provisions constituted the contract of insurance between [the insurer] and [the named insured]. To construe each clause or endorsement in isolation and without reference to the other policy provisions would do violence to basic contract law for insurance contracts, like other contracts, must be read and construed as a whole and not piecemeal.

*Id.* The *Akers* court went on to state that "[w]hen the declaration sheet is read in conjunction with . . . the uninsured motorist endorsement, it is clear that the parties only intended the two vehicles described in the declaration to be insured." *Id.* at 155. If the *Akers* court accepted the defendants' theory, the named insured "could own an unlimited number of cars and all would be insured yet he would be paying premiums for coverage on only two," which "would lead to a result beyond the intent of the contracting parties." *Id.* at 156. Consistent with *Akers*, this Court considers the UM/UIM Endorsement in conjunction with the other provisions in the Policy, and also considers whether the Policy indicates that Wausau and Purnell intended for UM/UIM coverage to apply to "Owned 'Autos' Only."

Third, in *Bayer v. Travelers Indemnity Co.*, 267 S.E.2d 91 (1980), the Supreme Court of Virginia considered "whether [Bayer], injured while a passenger in his own uninsured automobile during a collision with another uninsured vehicle, [could] recover under the uninsured motorist endorsement of a liability policy written on other vehicles owned by the driver of the [Bayer's] automobile." *Id.* at 91. A person named Whitaker was driving Bayer's vehicle, and Bayer was a passenger in the car. *Id.* at 91–92. An uninsured motorist collided with Bayer's vehicle, which was also uninsured, injuring Bayer. *Id.* Bayer sought coverage as an insured under the UM/UIM endorsement to Whitaker's policy. *Id.* The endorsement defined "Insured automobile" as "an automobile registered in Virginia with respect to which the bodily injury and property damage *liability coverages* of the policy apply." *Id.* at 92 (emphasis added). When the Supreme Court of Virginia clarified *Bayer* in a subsequent case, the court stated:

Although specific policy provisions were not recited in the [*Bayer*] opinion, the basis for this holding is clear from the record on file with the Court. The declarations page of Whitaker's policy contained a specific section addressing vehicles included for the purpose of the UM coverage. Only "automobiles owned by the Named Insured" were designated for insurance coverage under the UM endorsement and, therefore, the policy did not cover a vehicle owned by Bayer.

*Nationwide Mut. Ins. Co. v. Hill*, 439 S.E.2d 335, 337 (1994).

Fourth, in *Nationwide Mut. Ins. Co. v. Hill*, 439 S.E.2d 335 (Va. 1994), the Supreme Court of Virginia held that a passenger was insured under the UM/UIM endorsement of the driver's policy. *Id.* at 338. The policy at issue in *Hill* "did not limit the definition of the vehicle to one owned by the named insured, as the policy did in *Bayer;* nor did it include any language which would restrict the definition of 'insured vehicle' to a vehicle identified or described in the policy provisions." *Hill*, 439 S.E.2d at 337–38. The *Hill* case is inapposite because it never addressed whether the declarations limited the coverage described in the UM/UIM endorsement. In fact, the "declaration sheet was not part of the record in [that] case." *Id* at 338 n.2. Here, the Court finds that this case is more analogous to *Bayer* than to *Hill*. The Policy at issue here, like Whitaker's policy in *Bayer*, contains a specific provision addressing the vehicles that qualify for UM/UIM coverage.

The fifth and sixth cases, the cases upon which Plaintiffs rely, are not binding on this Court and are distinguishable. In *Porter v. Buck*, 137 F. Supp. 3d 890 (W.D. Va. 2015), Porter was a passenger in an ATV who sustained injuries in an accident and brought an action against the insurer to seek a declaration that her injuries were covered under the UM/UIM endorsement to an automobile policy issued to her father. *Id.* at 892. The key issue in *Porter* was whether an ATV qualified as a "motor vehicle," and the insurer had "conceded that the UM/UIM coverage provided under the policy [was] not limited to the 'covered autos.'" *Id.* at 898–99. Thus, even though *Porter* analyzed the interplay between how a term is defined in an endorsement and

21

another provision of a policy, the claimant's status as a family member of the named insured and the key issue in dispute distinguish *Porter* from the instant case. With regard to *Neff v. Providence Washington Ins. Co.*, No 97-126, 1998 U.S. Dist. Lexis 15866 (W.D. Va. Sept. 1, 1998) (unpublished), the court found that the "specific policy provisions at issue in [that] case [did] not operate to exclude [the] plaintiff from [underinsured motorist] coverage . . . ." *Id.* at *6. Although the endorsement in *Neff* is similar to the UM/UIM Endorsement here, unlike in *Neff*, other provisions in the Policy limit UM/UIM coverage to "Owned 'Autos' Only'".

In sum, the Court relies upon the binding authority in *Stone*, *Akers*, *Bayer*, and *Hill*. The cases cited by Plaintiffs, *Porter* and *Neff*, are not binding and are distinguishable.

### 3. Application of Case Law to the Policy

The Policy consists of (1) declarations, (2) coverage forms, and (3) endorsements. At bottom, the parties dispute whether the general language in the UM/UIM Endorsement supersedes the specific language in the Declarations and Coverage Forms for purposes of determining whether the Vehicle is a "covered auto."

In resolving this issue, the court must consider the established principles of Virginia law regarding the interpretation of insurance policies. When interpreting such agreements, courts determine the parties' intent from the words used in the policy. *Va. Farm Bureau Mut. Ins. Co. v. Williams,* 677 S.E.2d 299, 302 (Va. 2009). The policy's provisions "must be considered and construed together, and any internal conflicts between provisions must be harmonized, if reasonably possible, to effectuate the parties' intent." *Id.* When a disputed policy term is unambiguous, the court must apply its plain meaning as written. *Id.* "However, if disputed policy language is ambiguous and can be understood to have more than one meaning, [the court must] construe the language in favor of coverage and against the insurer." *Id.*

Here, the Vehicle is not a "covered auto" for the following three reasons. First, like in *Stone*, the Virginia Uninsured Motorist Statute does not mandate UM/UIM coverage because the Vehicle involved in the Accident was not one of the three vehicles listed in the Policy. Second, like in *Akers*, this Court considers the UM/UIM Endorsement in conjunction with the other provisions in the Policy. The fact that the UM/UIM Endorsement generally defines "covered auto" as a motor vehicle with respect to which liability coverage applies is not dispositive because the Policy specifically and unambiguously distinguishes between "covered autos" for purposes of liability coverage and for purposes of UM/UIM coverage. The Policy indicates that liability coverage applies to "any auto," and that UM/UIM coverage applies only to the three vehicles defined as "owned autos." Third, like in *Bayer*, this Court is mindful that Virginia "uninsured motorist coverage is meant to protect an insured motorist . . . and permissive users of his vehicle against the peril of injury by an uninsured wrongdoer, not to provide insurance coverage upon each and every uninsured vehicle to everyone." *Bayer*, 267 S.E.2d at 93 (citation and internal quotation marks omitted).

Because the Vehicle is not a "covered auto," Gabarette and Castillo's Estate were not "occupying" a "covered auto" at the time of the Accident, and therefore they do not qualify as an "insured" for purposes of UM/UIM coverage. Because Gabarette and Castillo's Estate do not qualify for UM/UIM coverage, the Court grants Wausau's Motion for Summary Judgment and denies the Estate's cross-Motion for Summary Judgment.

## IV. CONCLUSION

The Court dismisses Purnell from this action because the Estate's Complaint does not state a claim against Purnell, and permitting Purnell to remain a party this action would defeat subject matter jurisdiction. The Court overrules Wausau's objection to the magistrate judge's

23

ruling because Castillo's Estate alleged a plausible claim that would not necessarily be futile. Furthermore, the Estate is not entitled to declaratory judgment concerning liability coverage because a tort action is pending in state court. Gabarette and the Estate are not entitled to UM/UIM coverage because the Vehicle they were occupying at the time of the Accident is not a "covered auto" for UM/UIM purposes.

Accordingly, it is hereby

**ORDERED** that Defendant Purnell Furniture Services, Inc.'s Motion to Dismiss or Drop (Dkt. No. 116) is **GRANTED**; it is further

**ORDERED** that Defendant Employers Insurance Company of Wausau's Objection to Magistrate Judge's Ruling on Motion to Amend Complaint (Dkt. No. 113) is **OVERRULED**; it is further

**ORDERED** that Plaintiff Bruce Levine, Personal Representative and Administrator of the Estate of Carlos Bolanos Castillo's Motion for Summary Judgment (Dkt. No. 103) is **DENIED**, and that Count I of the Estate's Complaint is dismissed without prejudice; it is further

**ORDERED** that Wausau's Motion for Summary Judgment (Dkt. No. 65) is **GRANTED**.

**IT IS SO ORDERED**.

ENTERED this /01 day of March, 2017.

Alexandria, Virginia

/s/
_____
Bruce Lee
United States District Judge

24